UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ARDELLA MARTIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:05-cv-152-RLY-WGH |
| | ) | |
| KNOX COUNTY ASSOCIATION FOR | ) | |
| RETARDED CITIZENS, INC., | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ardella Martin ("Plaintiff"), filed a Complaint against her former employer, the Knox County Association for Retarded Citizens, Inc. ("KCARC"), alleging that she was discriminated against on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). KCARC now moves for summary judgment. For the reasons explained below, the court **GRANTS** its motion.

**I.    Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "genuine" where the evidence "is such that a reasonable jury could return a verdict for the non-moving party."

1

*Id.*

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* If the non-moving party fails to make a sufficient showing on an issue to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Ripberger v. Western Ohio Pizza, Inc.*, 908 F.Supp. 614, 617 (S.D. Ind. 1995) (citing *Celotex Corp.,* 477 U.S. at 323).

**II.    Facts**

   **A.    Background**

KCARC hired Plaintiff, an African-American female, on September 9, 1996, in its group home program. (Deposition of Ardella Martin ("Plaintiff Dep.") at 16-17; First Amended Complaint at ¶ 5). During Plaintiff's employment with KCARC, Plaintiff worked, in some capacity, as a Qualified Mental Retardation Professional ("QMRP"). (Plaintiff's Answer to Interrogatory No. 1). As a QMRP, Martin evaluated disabled residents to assess training needs, completed Individual Service Plans with respect to the residents, created and implemented training objectives, evaluated work center goals, and

monitored individual residents' community employment and required training. (*Id*.). Plaintiff also completed behavior plans, if required, with the review and assistance of a resident's medical team. (*Id*.). Additionally, among other duties, Martin assisted residents with their finances and, specifically, with the spending of any Medicaid back payments. (Plaintiff Dep. at 101-02, 116, 135-36).

QMRPs work in either the group home program or the waiver program. (*Id*. at 16-17). According to Plaintiff, "[t]he waiver department is a program that is designed for residents who are leaving the group homes to move out into the community into their own apartments or houses." (*Id*. at 16). In contrast, group homes provide a structured environment where residents are prepared to hopefully enter the waiver program at some later date. (*Id*. at 16-17). At the time of Plaintiff's termination, there were three QMRPs in the waiver department, including Plaintiff. (*Id*. at 40). Additionally, there were four QMRPs in the group home (or residential) department. (*Id*. at 40-41).

**B.     The October 2003 Written Warning**

In October 2003, Plaintiff began reporting directly to Matt Minderman ("Minderman"), Director of Program Services. (*Id*. at 21, 32-33). On October 2, 2003, Minderman gave Martin a written warning for failure to follow a supervisor's orders with respect to her judgment in assisting a client spend his Medicaid back payment. (*Id*. at 76-78; Plaintiff Dep. Ex. 8). Plaintiff does not contest the material facts with respect to the written warning.

3

**C.     Plaintiff's Termination**

On Thursday, April 22, 2004, Donna King ("King"), Director of Program Services at KCARC's Baker Center, entered the room in which the QMRPs' desks are located and instructed the QMRPs present to help feed the residents the following day due to staff shortages.[1] (Plaintiff Dep. at 41-42; Affidavit of Donna King ("King Aff.") at ¶¶ 3-4 and Ex. A). Despite King's instruction, Plaintiff did not believe King to be addressing her "because she had already passed [her] when she came in [the room]." (Plaintiff Dep. at 42-43). Accordingly, Plaintiff did not acknowledge King's request. (*Id*. at 42; King Aff. at ¶ 5).

On Friday, April 23, 2004, Amy Schafer ("Schafer"), Plaintiff's immediate supervisor, instructed Plaintiff that she needed to assist with feeding the residents and that the day's in-service meeting would be cut short so that those assisting could "come back over and help feed the residents." (Plaintiff Dep. at 43-44; Affidavit of Amy Schafer ("Schafer Aff.") at ¶ 6 and Ex. A). Despite her supervisor's explicit instruction, Plaintiff failed to assist with feeding the residents. (Schafer Aff. at ¶ 6). Plaintiff was the only employee who failed to heed her instruction. (*Id*. at ¶ 11).

Schafer believed Plaintiff's failure to follow her instruction was a deliberate act of defiance and insubordination. (*Id*. at ¶ 12). Accordingly, that same day, Schafer went to her immediate supervisor, Donna Lormand ("Lormand"), to discuss how best to proceed.

---

[1] The residents are fed in the cafeteria, which is located in the Baker Center. (Plaintiff Dep. at 46).

(*Id.* at ¶¶ 3, 13). Lormand told Schafer that she would speak with Human Resources and get back with her. (*Id.* at ¶ 14). Later that day, Lormand informed Schafer that she had spoken with Human Resources and Minderman regarding Plaintiff's failure to follow Schafer's orders, and that the decision had been made to terminate Plaintiff's employment due to the fact that Plaintiff committed a similar act of insubordination in October 2003. (*Id.* at ¶ 15). Schafer deferred to Lormand's decision. (*Id.*).

Plaintiff was officially terminated on April 27, 2004, for inappropriate conduct and failure to follow a supervisor's orders. (Plaintiff Dep. at 8, 36, 137-38 and Ex. 22; Schafer Aff. at ¶¶ 15-16).

Plaintiff does not dispute the material facts with respect to KCARC's decision to terminate her employment.

### D. Miscellaneous Claims of Discrimination

In addition to the October 2003 written warning and her termination in April 2004, Plaintiff claims other instances of discrimination during her employment with KCARC, including the following:

1. Plaintiff was "told" that Tim Lowe ("Lowe") received her caseload after her termination. (Plaintiff Dep. at 60-61). Plaintiff believes this evidences discrimination because KCARC did not speak to her regarding her insubordination on April 23, 2004, the day that it occurred. (*Id.* at 61). Additionally, Plaintiff believes "the mere fact that [Lowe was] made a case manager and doesn't meet the qualifications of a QMRP" establishes that

       her termination was based on her race. (*Id*. at 63). However, Plaintiff has no personal knowledge of whether Lowe actually received her caseload. (*Id*. at 60-61). Likewise, Plaintiff has no personal knowledge of Lowe's qualifications. (*Id*. at 64).

2. On October 10, 2003, Plaintiff was to present the award for Resident of the Year at KCARC's annual banquet. However, when her name was called to present the award, Minderman walked to the stage and presented the award in her place. (*Id*. at 64-66). Plaintiff believes Minderman's actions in presenting the award exhibited race discrimination. (*Id*. at 66-68). She reached that conclusion because of her disagreement with Minderman's discipline of her on October 2, 2003. (*Id*.).

3. Plaintiff alleges that KCARC discriminated against her because of her race because in October 2001, KCARC, according to Plaintiff, had decided to mail all of the QMRPs' work "to a woman who used to work for the agency, who now lived in Lafayette" to be approved. (*Id*. at 124-25). Plaintiff is unsure who made this decision. Moreover, Plaintiff never raised her concerns with anyone that this decision was based on her race. (*Id*). No one told Plaintiff that this decision was due to her race. (*Id*. at 131). Instead, Plaintiff disagreed with the decision and, therefore, believes that it must be because of her race. (*Id*.).

4. Plaintiff also alleges that she might have been treated differently by Joyce

    Cox because of her race. (*Id*. at 129). Specifically, Plaintiff testified, "I don't know if Joyce disliked me for my race, but I can tell you that she hard-timed me all the way." (*Id*). Plaintiff believed that Cox did not like her because she was outspoken. (*Id*. at 127-28). Additionally, Plaintiff is not aware how Cox treated other QMRPs compared to how her perception of how she was treated. (*Id*. at 132-33). According to Plaintiff, Cox left KCARC in 1999. (*Id*. at 133).

5. Finally, Plaintiff points to the affidavits of Joyce A. Shade ("Shade"), a former employee of KCARC, and Brandy Hyde ("Hyde"), a current employee at KCARC, as evidence of Lormand's racial animus toward African-American residents of KCARC and certain African-American KCARC employees (including Shade). (*See* Affidavit of Joyce A. Shade ("Shade Aff."); Affidavit of Brandy Hyde ("Hyde Aff.")).

## III. Discussion

A plaintiff may prove his intentional employment retaliation and discrimination claims by using either the "direct method" or "indirect method." *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998). Under the "direct" method of proof, "the plaintiff may show (either through direct evidence or circumstantial evidence) that the employer's decision to take the adverse job action was motivated by an impermissible purpose (race, sex, religious animosity, etc.)." *Sattar v. Motorolla, Inc.*, 138 F.3d 1164, 1169 (7th Cir.

1998); *see also Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Direct evidence "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes*, 359 F.3d at 504. Because such evidence is rarely made or encountered, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000), a plaintiff may "'prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes*, 359 F.3d at 504; *Troupe*, 20 F.3d at 737. That circumstantial evidence, however, "must point directly to a discriminatory reason for the termination decision." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

    Here, Plaintiff's circumstantial evidence wholly fails to link Lormand's alleged racial animus with her decision to terminate Plaintiff. In other words, there is no admissible evidence from which a reasonable juror could conclude that Plaintiff's termination was motivated by an impermissible purpose – i.e., Plaintiff's race. Indeed, Plaintiff admits to the material facts which form the basis for her October 2003 written warning and April 2004 termination.

    In an effort to raise a genuine issue of material fact as to KCARC's intent, Plaintiff sets forth four instances of alleged race discrimination that she suffered while employed with KCARC.  (*see* Section II.D). This "evidence", however, consists of nothing but her own subjective beliefs of discrimination. "A subjective belief of discrimination, no

matter how genuine, cannot be the sole basis for a finding of discrimination." *Kizer v. Children's Learning Center*, 962 F.2d 608, 613 (7th Cir. 1992) (citation omitted).

Finally, Plaintiff points to the Shade and Hyde affidavits as evidence of Lormand's racial animus. (*See* Affidavit of Joyce A. Shade; Affidavit of Brandy Hyde). The affidavits contain little admissible evidence; in fact, most of the allegations are nothing more than hearsay. But even if the court were to consider the allegations contained within the affidavits, the most that could be said is that Lormand is biased against African-Americans. Lormand's alleged bias, however, is insufficient to create a triable issue, as there is no evidence linking her alleged bias to the ultimate decision to terminate Plaintiff. *Adams*, 324 F.3d at 939 (quoting *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("[B]igotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action.")). Plaintiff's race discrimination claim fails under the direct method of proof.

Even though Plaintiff has failed to establish discriminatory intent under the direct method of proof, she may still survive summary judgment under the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). Thus, Plaintiff must first establish a prima facie case of race discrimination. *Id*. at 802. Plaintiff fails to present any evidence or argument with respect to her prima facie case. Accordingly, Plaintiff's race discrimination claim fails as a matter of law. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003) (Plaintiff's failure to

establish a prima facie case of race discrimination "dooms her claim.").

**IV.     Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket # 32) is **GRANTED**.


**SO ORDERED** this   16th   day of April 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Michael K. Bonnell
mkbonnell@hotmail.com

Stephen W. Lyman
HALL RENDER KILLIAN HEATH & LYMAN
slyman@hallrender.com

Craig M. Williams
HALL RENDER KILLIAN HEATH & LYMAN
cwilliams@HallRender.com